**GOVERNMENT OF the VIRGIN ISLANDS, Appellee,**

v.

**Christian MARTINEZ, Appellant.**

**No. 87–3773.**

United States Court of Appeals, Third Circuit.

Argued April 22, 1988.

Decided June 1, 1988.

Jeffrey L. Resnick (argued), James & Resnick, Christiansted, St. Croix, U.S. Virgin Islands, for appellant.

Terry Halpern, U.S. Atty., Roland B. Jarvis (argued), Asst. U.S. Atty., Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

Before SEITZ, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Appellant Christian Martinez appeals from the judgment of sentence of the district court. He was convicted by a jury of two counts of distribution of cocaine in violation of V.I. Code Ann. tit. 19, § 604(a)(1) (1977) and one count of trafficking in cocaine in violation of V.I. Code Ann. tit. 19, § 614a(a)(3)(A) (Supp.1986). We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

### I.

Martinez was convicted on the basis of two transactions in which a confidential informant allegedly bought cocaine from Martinez.[1] In order to record the conversations between Martinez and the informant, the government placed a transmitter on the informant prior to each of his meetings with Martinez to buy drugs. Because of unknown difficulties, no recording was obtained of the first transaction. A recording capturing the conversations that took place during the second drug transaction was, however, made.

At trial, the government presented the testimony of the informant, who testified as to the actual transactions, and of two Narcotics Strike Force agents, who testi-

---

1. One of the distribution counts is based on the first drug sale. The second distribution count and the trafficking count stem from the second transaction.

fied as to the events surrounding the transactions but who did not in fact witness either drug sale. The government also introduced the tape recording of the second transaction. The defense rested without presenting any evidence.

Following his conviction and sentencing, Martinez filed a timely appeal with this court. On appeal, we consider the four issues raised by Martinez: that the district court erred (1) in refusing to appoint a Spanish-speaking attorney to represent him; (2) in not compelling the government to identify the informant prior to trial; (3) in allowing the jury to read a transcript of the tape recording prepared by a government agent; and (4) in permitting the informant to testify during redirect examination in the government's case-in-chief as to prior uncharged drug sales by the defendant.

Our standard of review as to each issue is whether the district court abused its discretion. We will address these arguments in turn.

## II.

### A.

■ Prior to trial, Martinez filed a motion requesting that a Spanish-speaking attorney be appointed to represent him or in the alternative that the court provide an interpreter because he speaks no English and his court-appointed attorney speaks no Spanish. The U.S. magistrate denied the motion for the appointment of a Spanish-speaking attorney but permitted counsel to utilize the services of an interpreter at public expense.[2]

Martinez concedes that there is no duty to furnish counsel fluent in the defendant's language. He, however, asserts that "extreme difficulties encountered by the use of translation" in various stages of the

proceedings (including counseling during pre-trial phases) rendered the order an abuse of discretion. Martinez's argument on appeal reduces itself to the contention that translation is not a replacement for direct dialogue between a defendant and his attorney.

Martinez has totally failed to carry his burden in showing any prejudice that he suffered as a result of not having a Spanish-speaking attorney represent him.[3] Given that an interpreter was provided and absent a showing of prejudice, we must reject Martinez's contention that the denial of his motion constituted an abuse of discretion.

### B.

■ Prior to trial, Martinez sought to compel the government to reveal the identity of the informant. In opposing Martinez's motion, the government represented that the informant would testify at trial and that his identity would be revealed at the time of jury selection. The government argued that revealing the informant's identity at an earlier time might jeopardize his life, noting that the informant would testify at several trials scheduled to be heard several weeks before Martinez's. The U.S. magistrate refused to compel the government to disclose the identity of the informer.[4]

On appeal, Martinez asserts that the order denying his motion constituted an abuse of discretion. He argues that the informant's testimony was of crucial importance in this case, that non-disclosure of the informant's identity precluded the defense from investigating for purposes of impeachment events surrounding his becoming an informant, and that the government's claims of danger to the informant were illusory given that the informant was

---

**2.** The record does not indicate whether this ruling was reviewed by the district court. We will review this issue because the government has not suggested that this issue is not properly before us and the question of the propriety of our review is not jurisdictional in nature.

**3.** Based on our resolution of this issue, we decline to address the government's contention

that Martinez's request to have a Spanish-speaking attorney appointed should be denied because Martinez spoke and understood English.

**4.** Again, the record does not indicate whether this order was reviewed by district court. *See* note 2, supra.

in the witness protection program and was outside the Virgin Islands.

We begin our analysis by noting the well established principle that the government is not automatically required to disclose the name of a witness in a non-capital criminal case. *United States v. DiPasquale,* 740 F.2d 1282, 1293 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 364 (1985). The court, however, within its discretion, "may order such disclosure to ensure the effective administration of the criminal justice system." *United States v. Higgs,* 713 F.2d 39, 44 n. 6 (3d Cir.1983), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). Courts may properly refuse to compel the government to disclose the identity of a witness when such disclosure may pose a threat to the witness. *See, e.g., id.* at 45.

We are not prepared to dismiss cavalierly the government's assertion regarding the potential danger to the informant. We also note that Martinez ability to prepare for trial and to cross-examine the informant was not unduly restricted in that the government provided Martinez with two written statements made by the informant regarding his involvement in this case and with the fact that he had no criminal record. Under these circumstances, we conclude that the order denying Martinez's motion was not an abuse of discretion.

## C.

During the trial, the government introduced into evidence, without objection, the tape recording made during the second drug transaction between the informant and Martinez. Martinez objected to the government's attempt to introduce into evidence a transcript of the recording prepared by a government agent. The district court refused to admit the transcript into evidence but permitted the transcript to be available to the jury while the tape was played. On appeal, Martinez asserts that the court's ruling constituted an abuse of discretion because (a) the transcript substituted wholly new evidence for the "highly garbled and mostly unintelligible tape"; (b) the transcript was not made available to

Martinez until offered in court, thus depriving him of the opportunity to raise specific objections; and (c) identification in the transcript of the second speaker as "Martinez" was prejudicial to Martinez and the government failed to provide independent verification that Martinez was in fact the second voice on the tape.

■ The first assertion advanced by Martinez is meritless. The transcript in no way introduced new evidence. In fact, the court, prior to playing the recording, issued two cautionary instructions to the jury that addressed this exact possibility. These instructions stated in relevant part:

Ladies and gentlemen of the jury, I am going to permit the tape. The tape is the evidence. And you are going to see a copy of what the Government says the tape says, but that is not evidence. That is just an assistance to you. And as soon as the tape is finished, [the clerk] will collect the transcripts.

What you are going to be receiving are transcripts. And as I said, that is not evidence. The evidence is on the tape. If there is any dispute about what is in the transcript and what is on the tape, it is the tape that controls.

These instructions properly advised the jury as to the limited role to be served by the transcript. We conclude that the transcript did not introduce new evidence in addition to the tape recording.

■ Martinez's second allegation of error as to the transcript is also without merit. In his briefing and at oral argument, Martinez never asserted that the transcript contained any errors. Without a showing of any inaccuracies or prejudice to the defendant, we will not overturn the district court's ruling permitting the jury to read the transcript. The limiting instructions cited above further negated any possible inaccuracies or prejudice to Martinez that might have been contained in the transcript.

■ Martinez's third contention, i.e., that the insertion of the name "Martinez" in the transcript to identify the second speaker on the tape was improper, is slightly more

troubling but must also fail. The tape itself never contains a reference to "Martinez," and the name "Christian," Martinez's first name, is heard only twice. The government, however, introduced sufficient evidence to justify the use of the designation "Martinez" in the transcript. *See United States v. Rengifo,* 789 F.2d 975, 983–84 (1st Cir.1986). Among the relevant evidence was the testimony of the informant identifying Martinez as the person from whom he bought the cocaine on the night on which the tape recording was made. Although the agent who prepared the transcript was unable to identify the second voice on the tape as that of Martinez when he monitored the actual drug transaction, he was able to verify the voice when the transcript was presented to the court. Indeed, the agent testified that, after arresting Martinez, he could identify Martinez's voice.[5]

Nor do we find the addition of Martinez's name in the transcript impermissibly prejudicial on this record. Any prejudice that might have flowed from the use of his name to identify the second speaker on the transcript was alleviated when the district court cautioned the jury as follows:

> [O]n the transcript they listed somebody named Billy [the code name of the informant] as saying something and somebody named Martinez as having said something. But remember you are the ones that are going to decide whether it was one and the other. [The names Billy and Martinez are used] simply only for the purposes of carrying out the conversation.

Although a preferable manner of identifying the speakers on the transcript would have been to refer to them as "Speaker 1" and "Speaker 2" or such similar designation, we conclude that, based on the agent's testimony identifying Martinez as the second speaker and the cautionary instruction issued by the district court, the court's ruling permitting the jury to read the transcript while the tape recording was

being played did not constitute an abuse of discretion.

### D.

We next address Martinez's contention that the district court committed reversible error by permitting the informant to testify during redirect examination as to uncharged drug sales by Martinez. On direct examination of the informant during the government's case-in-chief, the informant testified to having sold drugs in the past. When the government inquired into the informant's "drug relationship" with Martinez prior to the informant's beginning to work for the Narcotics Strike Force, the defense objected. The district court sustained this objection; the court specifically rejected the government's argument that this information was relevant in order to establish the relationship between the informant and Martinez because the government had already established that such a relationship existed.

On cross-examination, Martinez's counsel questioned the informant about the informant's own drug-selling activities as follows:

> Q: You indicated that, in addition to using drugs, you also sold drugs. How old were you when you started selling drugs?
> A: How old was I?
> Q: That is what I asked, yes, sir.
> A: Say, I must have been about eighteen.
> Q: Okay. What kind of drugs did you sell when you were eighteen?
> A: I sell a little marijuana.
> Q: Did you ever sell crack?
> A: Well, yes, hanging around the corner, yes.
> Q: Did you ever sell cocaine?
> A: Yes, sir.
> Q: So the [correct] answer is that, I sold marijuana, crack and cocaine, would be correct; is that correct?
> A: It is still the same thing, sir.

---

**5.** Although the record is silent regarding when the agent prepared the transcript vis-a-vis the arrest of Martinez, the agent testified that he had reviewed the tape recording as recently as the morning before trial and that the transcript was a fair and accurate rendition of the tape.

Before beginning its redirect examination, the government sought and obtained the court's permission, over what we consider to be Martinez's objection, to inquire into prior drug transactions involving the informant and Martinez on the ground that the defense had opened the door to this testimony by its questioning of the informant during cross-examination. On this appeal, Martinez contends that the court's ruling constituted reversible error in that improper and highly prejudicial testimony [6] was thereby introduced even though, in fact, the record clearly shows that Martinez's cross-examination did not open the door.

■ We begin by noting that the admissibility of evidence and the scope of redirect examination are within the discretion of the district court. Our review of the trial transcript, however, leads us to the firm conclusion that the premise for the admission of the quoted redirect examination of the informant, viz., that Martinez opened the door, did not exist.

The cross-examination of the informant by Martinez was limited to the subject of the informant's *own* prior drug dealing, a subject that had been raised by the government in its case-in-chief. The trial transcript shows that the cross-examination did not touch on the subject of the informant's prior drug relationship with Martinez in

any way. Therefore, given that the defense did not open the door to this testimony and no additional (or viable) rationale has been offered, this line of inquiry should have been excluded on the same basis as the district court's earlier ruling that testimony as to prior uncharged drug sales involving Martinez should not be placed before the jury.

### E.

■ This conclusion does not, however, end the matter. We must now examine the record as a whole to determine whether the district court's ruling constituted harmless error. *United States v. Hastings*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). If it is highly probable that the error did not affect the judgment, the error is deemed to be harmless. *Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir.1976).

The government's case against Martinez was based on the dual pillars of the testimony of the confidential informant and the tape recording of the second transaction. The tape was compelling evidence that Martinez's sold cocaine to the informant. It captured a conversation between the informant and Martinez in which the quantity desired and the amount to be paid are discussed. We hear the informant counting out the money and Martinez telling the

---

**6.** The testimony of the confidential informant on redirect as to his prior drug involvement with the defendant was as follows:

Q: ... Please tell us some of the circumstances around your involvement in selling crack and cocaine?

A: Well, I was living in Marlee Project where I be hanging out. As a matter of fact I was a Rastaman hanging out at Marlee Project where people would come and ask for drugs, and I would be there and I would take them to buy drugs from the dealers, sir.

Q: So when you said that you sold crack and cocaine you meant to include that you also helped people to get what they wanted?

A: Yes, sir.

....

Q: Is there anyone in the courtroom that you may have directed someone who wanted crack or cocaine for?

A: Yes, they would come to me and sometimes ask me, "Do you know the dentist called Christian Martinez?" and I would say I do. And they ask me if I know where he lives and if I could

go and take them to him and stuff like that, and I would say, yes I would take them to Christian Martinez, and he would come and make a transaction.

....

Q: Was there ever a time before your involvement with the Narcotics Strike Force that you had any dealings with the dentist involving crack?

A: Yes. He would come to me and tell me, well, he would like me to sell some drugs for him.

Q: And what would happen?

A: Well, I tell him, well, I would go along and help him sell his drugs.

Q: What kind of drugs?

A: Cocaine.

Q: Any other kind of drugs?

A: No, sir.

Q: Now, when you say cocaine, does that include crack?

A: Well, at that time he didn't—I would say, yes, sir.

informant not to discuss the transaction with anybody. In addition, the tape buttressed the credibility of the informant in that it supported his version of the events that occurred during the second transaction.

The combination of the tape recording and the properly admitted testimony of the informant as to the second transaction provided overwhelming evidence of the guilt of Martinez on the two counts stemming from that sale. As to the first transaction, the principal evidence against Martinez was the testimony of the informant. Given that the overall credibility of the informant was greatly enhanced by the corroboration provided by the tape, we conclude that the evidence of Martinez's guilt on the first count was also substantial. Under these circumstances, we conclude that it is highly probable that the admission of the testimony of the informant of prior illegal acts committed by Martinez did not affect the judgment and thus was harmless error.

### III.

In light of the foregoing, the judgment of sentence will be affirmed.