NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1381
_____

UNITED STATES OF AMERICA

v.

SHERMAN HOUSER,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 08-cr-00759-001
(Honorable Gene E.K. Pratter)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 14, 2011

Before:  SCIRICA, BARRY and VANASKIE, *Circuit Judges*.

(Filed: 1/25/2011 )
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

After a jury trial, Sherman Houser was convicted of conspiracy to commit armed

bank robbery, in violation of 18 U.S.C. § 371; armed bank robbery, in violation of 18

U.S.C. § 2113(d); and carrying and using a firearm during a crime of violence, in

violation of 18 U.S.C. § 924(c)(1). On appeal, Houser argues the jury's deliberations were unduly influenced by the trial court's decision to provide it with a paper transcript of a conversation between Houser and one of his alleged collaborators. Because the District Court did not abuse its discretion in allowing the jury to use the transcript as a listening aid, we will affirm.

## I.

According to the evidence introduced at trial, Houser and Rondell Inman robbed the Bank of America on 14425 Bustleton Avenue in Philadelphia at gunpoint on November 6, 2006. After stealing over $70,000, the two fled in a stolen getaway car driven by Derrick Hutton. Inman entered into a plea agreement in which he pleaded guilty to robbing a Wachovia Bank in Ewing, New Jersey and admitted — but was not charged with — robbing three other banks, including the Bustleton Avenue Bank of America. Hutton also pleaded guilty to the Bank of America robbery. Both men testified at Houser's trial, hoping their cooperation would yield leniency at future sentencing hearings.[1]

---

[1] In addition to eliciting the testimony of these two cooperating witnesses, the government established its case through footage from the bank's surveillance camera and through the testimony of bank employees and witnesses whose accounts corroborated the getaway plan outlined by Houser's confederates. One such witness, a construction worker completing a flooring project next to the bank, believed he had witnessed the end of a robbery, and he wrote down the license plate number of the getaway car. Law enforcement officials found the vehicle running and unoccupied in the parking lot of an apartment complex. A knit black skullcap was found on the ground by the passenger door, and analysis revealed Houser to be a major contributor to DNA found on the hat.

As part of his efforts on the government's behalf, Inman made a consensual recording of a conversation with Houser, in which the two discussed the government's evidence in the Bank of America robbery and Hutton's role as getaway driver. The audio recording was played at trial while television screens displayed an electronic transcript synchronized to the tape. Initially, the prosecutor asked for permission to pass out individual transcripts to the jurors. Houser's counsel inspected the transcripts and offered, "No objection, Your Honor." Subsequently, the prosecutor hesitated, first rescinding his request to circulate the transcripts then reverting to his initial request. The trial judge told the prosecutor to "hold off a little bit on that," and defense counsel requested the transcript "not be shown until the tape is actually being played." The District Court reiterated that "the transcript itself is really only an aid" and "not evidence." The prosecutor then expressed concern that it might be comparatively difficult for the jurors to read the transcript on the screens and broached the possibility of playing the recording a second time for their benefit.

Shortly thereafter, the prosecutor asked the court for permission to play the tape again, this time after furnishing the jurors with individual transcripts. At a sidebar conference, defense counsel objected, arguing it would be unfairly prejudicial to allow the government to present the evidence twice. The prosecutor stressed the jurors' right to have the transcript "as an aid" to help them process the dialogue. Defense counsel theorized that "if the jury were to come back during deliberations and say they need to have [the transcript], then we may have another issue at that time." Once more

underscoring "the fact that what the evidence really is, is the audible evidence," the

District Court sustained defense counsel's objection.

Prior to closing arguments, the prosecution moved its exhibits — including the

audio conversation — into evidence. During deliberations, the jury requested a copy of

the transcript. Defense counsel objected, arguing the paper transcript had not been

admitted into evidence.[2] The District Court reconvened the jury in the courtroom and

allowed the government to play the tape of the conversation with the electronic transcript

again displayed on the screen. Thereafter, the court allowed the jurors to have the paper

copy of the transcript. First, however, the court cautioned,

> We do have a transcription of the conversation that is available; however, and it's essentially the words, it is, in fact, a copy of the words you see on the screen. It's available. It's not evidence, only what you have heard is the evidence. And if there's a discrepancy [between] what you see in writing, and what you hear, the words, then what you hear is what controls absolutely. The written word is not evidence, only what you hear and can hear is evidence, but as an aid to you and only as an aid, we do have a writing available.

Houser does not argue the paper transcript was an inaccurate reproduction of the

electronic transcript, which was twice put before the jury.

---

[2] Houser insists neither the video screen containing the typed transcript nor the paper copy of the transcript was admitted into evidence. The government contends the electronic transcript was admitted without objection. From the record, it appears as though Houser might be attempting to differentiate between the television screens as physical objects and the words displayed thereon — counsel appeared to acknowledge "what was on the computer screen" had been moved into evidence when objecting to the jury's request. Regardless, because the jury was admonished to consider the paper transcript merely an aid to assist its understanding of the properly admitted audio recording, this evidentiary dispute is immaterial.

The jury found Houser guilty on all counts, and the District Court sentenced him to 300 months' imprisonment, a five-year term of supervised release, and payment of $70,194 in restitution. Houser timely appealed.[3]

## II.

"[T]he standard of review for use of [a] transcript as a listening aid is an abuse of discretion." *United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994). To make certain such an allowance falls within the proper exercise of its discretion, a trial court should "advise[ ] the jury as to the limited role to be served by the transcript" before deliberations. *Gov't of Virgin Islands v. Martinez*, 847 F.2d 125, 128 (3d Cir. 1988); *see also DiSalvo*, 34 F.3d at 1220 ("[T]he district court carefully warned the jury on several occasions that the transcript was not evidence."); *United States v. Ademaj*, 170 F.3d 58, 65 (1st Cir. 1999) ("Authenticated transcripts may be used by the jury to facilitate its understanding of the tape recordings themselves provided the court makes clear that the tapes, not the transcript, constitute evidence in the case." (internal quotation marks and citation omitted)). Despite the District Court's having taken great pains to instruct the jury on the primacy of the audio vis-à-vis the paper transcript, Houser nevertheless argues the jury room was tainted by the presence of items not admitted into evidence. *See Gov't of Virgin Islands v. Joseph*, 685 F.2d 857, 863 (3d Cir. 1982).

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

In *Martinez*, we assessed a similar contention. *See* 847 F.2d at 128. There, the trial court refused to admit the transcript of an audio recording into evidence but allowed the jury to consult the transcript while the government played the tape. *Id.* Martinez argued this ruling was an abuse of the court's discretion, but we found the transcript "did not introduce new evidence in addition to the tape recording." *Id.* In reaching this conclusion, we approvingly cited cautionary instructions issued by the trial court that helped render the appellant's claim "meritless." *Id.* In relevant part, those instructions stated:

> Ladies and gentlemen of the jury, I am going to permit the tape. The tape is the evidence. And you are going to see a copy of what the Government says the tape says, but that is not evidence. That is just an assistance to you. And as soon as the tape is finished, [the clerk] will collect the transcripts.

> What you are going to be receiving are transcripts. And as I said, that is not evidence. The evidence is on the tape. If there is any dispute about what is in the transcript and what is on the tape, it is the tape that controls.

*Id.* This language is strikingly similar to the instructions issued by the District Court here. The District Court took proper measures to ensure the jury's verdict was not influenced by evidence not received during the trial. Therefore, its decision to allow the jury to view the paper transcript during deliberations was not an abuse of its discretion. *See United States v. Pecora*, 798 F.2d 614, 631 (3d Cir. 1986) ("We find nothing in the record to indicate that the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affect defendants' rights in the event the jury had relied upon it.").

## III.

For the foregoing reasons, we will affirm.