713 F.2d 39
 UNITED STATES of America, Appellant,
v.
Walter M. HIGGS; Adrienne Smith; Freeman Barnhill; John
D. Kemp a/k/a Tomi; Ivory Cornell Toler a/k/a Mad
Dog; Danny Carter; John Davis a/k/a
Twenty; Benjamin Upshaw, Appellees.
and
UNITED STATES of America, Appellant,
v.
FUNN, Billy, Appellee.
 Nos. 83-5361, 83-5368.
 United States Court of Appeals,
Third Circuit.
 Argued June 15, 1983.
Decided Aug. 5, 1983.
 
 J. Alan Johnson (argued), U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellants.
 W. Penn Hackney, Asst. Federal Public Defender (argued), Pittsburgh, Pa., for Antionette Merida.
 William C. Kaczynski (argued), Pittsburgh, Pa., for John Kemp.
 Bart M. Beier, Pittsburgh, Pa., for Billy Funn.
 Mark Homyak, Pittsburgh, Pa., for Danny Carter.
 James B. Wiltse, Pittsburgh, Pa., for Freeman Barnhill.
 Stephen Swem, Pittsburgh, Pa., for Ivory Toler.
 J. Kerrington Lewis, Pittsburgh, Pa., for Audrey Taylor.
 Before HUNTER, HIGGINBOTHAM, Circuit Judges and GILES,* District judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 In these consolidated appeals the government asks us to review a district court order excluding certain evidence in two related criminal prosecutions. Relying on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the district court held that the government was required to turn over to appellees prior to trial the names and addresses of any government witnesses who had been offered immunity and/or leniency for their cooperation, as well as the substance of any promises made to those witnesses by the government. The government, citing evidence of threats to the witnesses' lives, respectfully refused to turn over that information before trial. As a result the district court held that those witnesses would be barred from testifying. The government appealed, contending that the district court erred in requiring them to produce the information under the terms of its order. We hold that, based on the unique circumstances of this case, it was an abuse of discretion for the district court to require disclosure before trial.
 
 
 2
 * Appellees were named in two related indictments filed on February 2, 1983, in the United States District Court for the Western District of Pennsylvania. The indictment at 83-10 charged a conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (1976), and two substantive counts in violation of 21 U.S.C. § 843(b) (1976). The indictment at 83-11 charged a conspiracy to distribute and possess with the intent to distribute heroin in violation of 21 U.S.C. § 846 (1976), and thirty-three substantive counts in violation of 21 U.S.C. §§ 841(a)(1), 843(b) (1976) and 18 U.S.C. § 2 (1976). At arraignment all appellees entered pleas of not guilty.[1]
 
 
 3
 Appellees filed a number of individual pretrial motions including motions containing requests for disclosure of certain evidence by the government.[2] The district court ruled on those motions at a hearing on April 29, 1983. Inter alia, the district court denied appellees' request for the names and addresses of any and all witnesses and potential witnesses that the government intended to call at trial. Transcript of April 29, 1983, at 7-8. It also denied appellees' request for early disclosure of all Jencks Act material, see 18 U.S.C. § 3500 (1976). Transcript of April 29, 1983, at 24. Those rulings are not before us in these appeals.
 
 
 4
 The district court granted appellees' request for the names and addresses of all intended government witnesses who had been offered immunity and/or leniency for their cooperation, as well as the substance of any grants of immunity, plea bargains, promises, and preferential treatment offered to those witnesses by the government. Transcript of April 29, 1983, at 8. The district court ruled that that information had to be disclosed under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States v. Gengler, 574 F.2d 730 (3d Cir.1978). Transcript of April 29, 1983, at 9. The government objected to the court's ruling on the grounds that, assuming any witnesses had entered into any agreements, disclosing their identity and the substance of their agreements would put them in serious physical jeopardy. It requested that the court "delay any disclosure of those matters until such time as we're nearing the point where the witnesses could be called to vitiate any potential hazards that may result." Transcript of April 29, 1983, at 9-10. The district court denied the government's request and ordered the information turned over immediately. Id.
 
 
 5
 On May 2, 1983, the government filed a motion for reconsideration and in the alternative for a stay of the district court's April 29 order. On May 2, 1983, the district court entered an order stating:
 
 
 6
 IT IS HEREBY ORDERED that [the government's] Motion is GRANTED insofar as reconsideration is sought, but DENIED insofar as relief is sought. This Court's Order of April 29, 1983, directing the government to disclose immediately the names and addresses of those witnesses with whom the government has entered into plea bargains or made promises of preferential treatment or given grants of immunity and whom the government intends to call at trial, is hereby AFFIRMED. The government's request for a stay is hereby DENIED.
 
 
 7
 United States v. Funn, Nos. 83-10, 83-11 (W.D.Pa. May 2, 1983) (emphasis in original).
 
 
 8
 On May 4, 1983, the government filed in our court a motion to stay the district court's April 29 order and a petition for a writ of mandamus directing the district court to vacate that order. The motion to stay was granted until the petition for mandamus could be heard before a full panel of the court. On May 12, 1983, a panel heard argument and issued the following order:
 
 
 9
 After consideration of the contentions of the parties and oral argument, it is ORDERED that the petition for mandamus is denied.
 
 
 10
 This order is not to be construed as approval of a practice by a district court to order the disclosure of witnesses identification and statements on a routine basis without consideration of such factors as the possibility of danger to the witnesses or their intimidation. This order is without prejudice to the government's right to apply to the district court for further consideration of its order if there are circumstances to justify that procedure.
 
 
 11
 United States v. Barnhill, No. 83-3225 (3d Cir. May 12, 1983) (order denying mandamus).
 
 
 12
 On May 16, 1983, the government filed under seal in district court a motion for reconsideration in light of our order denying the petition for mandamus. It included with its motion a sealed affidavit containing information detailing the potential danger to prospective witnesses if their identities were disclosed before trial. Oral argument on the motion was held on May 16. At that hearing the government made an in camera presentation of testimony concerning threats to prospective witnesses. The district court again affirmed its April 29 ruling and ordered the government to disclose the required information by May 19, 1983. Transcript of May 16, 1983, at 42-44. Trial was scheduled to begin sometime during the week of May 23, 1983.
 
 
 13
 On May 17, 1983, the government filed a notice of appeal from the district court's May 16 order. See 18 U.S.C. § 3731 (1976). The government then filed in district court a motion to stay pending appeal. That motion was denied on May 19, 1983. The government then sought an emergency stay pending appeal, and that stay was granted by Judge Weis on May 19, 1983. On May 20, 1983, the government sought an emergency stay pending appeal from the full court. That motion was granted on June 13, 1983. We heard oral argument on the merits of the government's appeal on June 15, 1983.
 
 II
 
 14
 In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967), the Supreme Court held that
 
 
 15
 the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
 
 
 16
 Id. at 87, 83 S.Ct. at 1196-97. That rule has been expanded to require that, even though a defendant has not made a specific request for exculpatory material, the prosecutor is under a duty to volunteer evidence "obviously of such substantial value to the defense that elementary fairness requires it to be disclosed." United States v. Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).[3] The rule laid out in Brady requiring disclosure of exculpatory evidence applies both to materials going to the heart of the defendant's guilt or innocence and to materials that might well alter the jury's judgment of the credibility of a crucial prosecution witness. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); United States v. Gengler, 574 F.2d 730, 735 (3d Cir.1978); United States v. McCrane, 547 F.2d 204, 207-08 (3d Cir.1976); accord Perkins v. Le Fevre, 691 F.2d 616, 619 (2d Cir.1982); United States v. Allain, 671 F.2d 248, 255 (7th Cir.1982); United States v. Bruner, 657 F.2d 1278, 1288 & n. 13 (D.C.Cir.1981).
 
 
 17
 A finding that evidence is exculpatory to the accused does not end the inquiry, however, as Brady only requires that material evidence be disclosed by the prosecution. Gengler, 574 F.2d at 735. In Agurs the Supreme Court analyzed the requirements of materiality in three different situations. First, where the prosecution's case includes perjured testimony and the prosecution knew, or should have known of the perjury, the undisclosed information is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." 427 U.S. at 103, 96 S.Ct. at 2397. Second, where the defendant has made a specific request for information, any undisclosed information will be considered material if "the suppressed evidence might have affected the outcome of the trial." Id. at 104, 96 S.Ct. at 2398. Finally, when no request is made by the defendant or only a general request for Brady material is made, undisclosed information will be held to be material only if "the omitted evidence creates a reasonable doubt that did not otherwise exist." Id. at 112, 96 S.Ct. at 2402. See generally Gengler, 574 F.2d at 735-36 (discussing Agurs ); McCrane, 547 F.2d at 205 (same). Only if exculpatory evidence meets the appropriate test of materiality does the due process clause impose upon a prosecutor the duty to disclose that information to a defendant.
 
 
 18
 The requirements of Brady are not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial. Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); United States v. Kaplan, 554 F.2d 577, 579 (3d Cir.1977). They are imposed because "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." Brady, 373 U.S. at 87, 83 S.Ct. at 1197. It is that underlying concern with the "avoidance of an unfair trial," id., which must guide us in deciding whether the information ordered disclosed by the district court is Brady material and, if it is, when it must be provided to appellees.
 
 III
 
 19
 In their pretrial motion appellees made a specific request for the names and addresses of governmental witnesses granted immunity and/or leniency and the substance of any agreements between those witnesses and the government. The district court held that the requested information had to be turned over to appellees so that they could use that information to challenge the credibility of the government's witnesses at trial. Transcript of May 16, 1983, at 20. The trial court noted that the information was not being turned over to allow appellees to engage in a pretrial investigation of the general reputation for truthfulness of the individuals in the community. Transcript of May 16, 1983, at 19-20. Rather the information was being provided solely that on cross-examination. The fact that the witnesses had agreed to cooperate with the government could be used to challenge their credibility. Transcript of May 16, 1983, at 20.
 
 
 20
 Before the district court the government contended that the information sought by the appellees did not fall squarely under the Brady rule because it was not directly exculpatory. Transcript of May 16, 1983, at 10, 11, 24. The Supreme Court has made clear, however, that information affecting a witness's credibility does fall within the Brady rule when the "reliability of a given witness may well be determinative of guilt or innocence." Giglio, 405 U.S. at 154, 92 S.Ct. at 766 (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)); Gengler, 574 F.2d at 735. Evidence that government witnesses have been granted immunity and/or leniency for their cooperation is clearly relevant on the issue of their credibility. See McCrane, 547 F.2d at 206-08. Thus, as the government conceded at oral argument, see Transcript at Oral Argument at 8, it would be under an obligation to turn over that information for any witness that is crucial to its case if suppression of that evidence "might have affected the outcome of the trial." Agurs, 427 U.S. at 104, 96 S.Ct. at 2398.
 
 
 21
 A difficulty arises, however, because we are reviewing the district court's order without the benefit of a completed trial record. It is difficult to analyze at this procedural stage whether potential impeachment material falls within Brady without knowing what role a certain witness will play in the government's case. See Agurs, 427 U.S. at 108, 96 S.Ct. at 2399.[4] In light of the government's concession at oral argument that the requested information is Brady material, however, we need not resolve that issue and will assume for the purposes of this appeal that the requested information must be disclosed. Transcript of Oral Argument at 8. Based on that assumption it was proper for the district court to order the government to turn over the names and addresses of any witnesses granted immunity and the content of any promises made to those witnesses to ensure their cooperation. See Gengler, 574 F.2d at 735; McCrane, 547 F.2d at 207-08.[5]
 
 IV
 
 22
 * Determining that the requested information falls under Brady, however, does not resolve the more difficult question of when that information must be disclosed to appellees. Because Brady rests on the requirements of due process, our focus must be on when disclosure is necessary to insure appellees a fair trial. United States v. Kubiak, 704 F.2d 1545, 1549-50 (11th Cir.1983); United States v. Olson, 697 F.2d 273, 275 (8th Cir.1983); United States v. Allain, 671 F.2d 248, 255 (7th Cir.1982). That inquiry in turn depends on what information has been requested and how that information will be used by appellees. No denial of due process occurs if Brady material is disclosed to appellees in time for its effective use at trial. Olson, 697 F.2d at 297; Allain, 671 F.2d at 255; see Agurs, 427 U.S. at 108, 96 S.Ct. at 2399; United States v. Kopituk, 690 F.2d 1289, 1337-40 (11th Cir.1982); see also United States v. Campagnuolo, 592 F.2d 852, 859-60 (5th Cir.1979) (discussing relationship between Brady material and Jencks Act material); United States v. Wolczik, 480 F.Supp. 1205, 1210 (W.D.Pa.1979).
 
 
 23
 The Brady material in this case was information that appellees could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think appellees' right to a fair trial will be fully protected if disclosure is made the day that the witness testifies. Disclosure at that time will fully allow appellees to effectively use that information to challenge the veracity of the government's witnesses. Kopituk, 690 F.2d at 1337-40 & n. 47; Allain, 671 F.2d at 255; United States v. Shelton, 588 F.2d 1242, 1247 (9th Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979); see Kubiak, 704 F.2d at 1549-50; United States v. Ziperstein, 601 F.2d 281, 291 (7th Cir.1979), cert. denied, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980). Any possible prejudice to appellees resulting from disclosure at trial can be easily cured by the district court. Kubiak, 704 F.2d at 1550; see Olson, 697 F.2d at 275; Ziperstein, 601 F.2d at 291. Thus we hold that, assuming the requested information is Brady material, appellees' due process rights to a fair trial would be satisfied in this case as long as disclosure is made the day that the government witnesses are scheduled to testify in court. See Kopituk, 690 F.2d at 1338 n. 47.
 
 B
 
 24
 At the May 16 hearing on the government's motion for reconsideration, however, the trial court held, as a matter of discretion, that the government had to disclose the requested information approximately a week prior to trial. As the trial court explained:
 
 
 25
 I do believe that [appellees] needed a reasonable time in advance of trial so that they can go and talk to these people on their own, and that's the time I'm trying to provide them. And, you know, I have picked out a date which I feel will give them not an overwhelming amount of time, but maybe five, six, seven days in order to contact these people, and I think that's a reasonable time.
 
 
 26
 Transcript of May 16, 1983, at 40; see id. at 13. We must decide whether in so ordering the district court abused its discretion.[6]
 
 
 27
 In support of its argument against requiring immediate disclosure, the government submitted, under seal, an affidavit from a Special Agent for the Drug Enforcement Administration ("DEA"). In this affidavit, the DEA agent reported information, which he deemed reliable, relative to threats made by or through appellees. He concluded, based upon the facts of the case and his experience, that disclosure of the government witnesses well in advance of trial would substantially imperil the witnesses' safety and create a probability of undue intimidation.
 
 
 28
 The court also held an in camera hearing where the DEA agent explained the specific facts underlying the affidavit. The court specifically questioned him about appellees' relationship to the individual alleged to have made the threat. It also questioned him concerning corroborating evidence showing that the threats were actually made.
 
 
 29
 We have examined thoroughly the DEA agent's affidavit and the transcript of the in camera hearing and conclude that, based on the facts of this case, it was an abuse of discretion for the trial court to order disclosure a week prior to trial. The government presented specific corroborated evidence of threats made by or through appellees. The information ordered disclosed to appellees was provided solely to help them in cross-examining the government's witnesses at trial, not to assist them in a general pretrial investigation. In light of those facts, we think that the district court abused its discretion in requiring disclosure at the time that it did. See Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); United States v. Ward, 703 F.2d 1058, 1062 (8th Cir.1983); United States v. Rosales, 680 F.2d 1304, 1305 (10th Cir.1981).
 
 V
 
 30
 We will reverse the district court's order of May 16, 1983, which precluded certain government witnesses from testifying if the government failed to disclose by May 19, 1983, the names and addresses of those witnesses who had been offered immunity and/or leniency, and the substance of any promises made to them by the government. We will remand this cause to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable James T. Giles, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Four of the original defendants have subsequently changed their pleas to guilty
 
 
 [2]
 The appellees also filed motions to adopt the pretrial motions of the other defendants. Those motions were granted by the district court. Transcript of April 29, 1983, at 2
 
 
 [3]
 "[T]he constitutional obligation [to produce evidence] is [not] measured by the moral culpability, or the willfulness, of the prosecutor. If evidence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it." Agurs, 427 U.S. at 110, 96 S.Ct. at 2400 (footnote omitted); see Smith v. Phillips, 455 U.S. 209, 219-20, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982)
 
 
 [4]
 The Supreme Court has stated:
 [T]here is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.
 Agurs, 427 U.S. at 108, 96 S.Ct. at 2399-2400.
 
 
 [5]
 At oral argument appellees argued that the requested information might also be used by defense counsel for investigating their cases in chief. Transcript of Oral Argument at 17. Appellees contended that knowledge of who the government's witnesses were and how they fit into the alleged conspiracy might lead to other evidence pertinent to the issue of substantive guilt or innocence. Furthermore appellees contended that the information must be provided before trial to allow them sufficient time to prepare their case
 We do not think that the requested information is Brady material for that purpose. While that information is material for impeachment purposes, names and addresses of witnesses and what they have been promised by the government for their cooperation absent other evidence, sheds little if any light on the underlying question of substantive guilt. Thus that information would not be material under the appropriate Agurs test, and would not need to be disclosed by the government under Brady.
 
 
 [6]
 In its brief the government argues that a district court has no inherent authority to direct the government to make pretrial disclosure of the names of its cooperating witnesses. While it is true that the government is not automatically required to make such disclosure, cf. 18 U.S.C. § 3432 (1976) (capital cases), the district court, within its discretion, may order such disclosure to ensure the effective administration of the criminal justice system. United States v. Fischel, 686 F.2d 1082, 1090-91 (5th Cir.1982); United States v. Rosales, 680 F.2d 1304, 1305 (10th Cir.1981); United States v. Colson, 662 F.2d 1389, 1391-92 (11th Cir.1981); United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir.1980); United States v. John Bernard Indus., 589 F.2d 1353, 1357-58 (8th Cir.1979); United States v. Harris, 542 F.2d 1283, 1291 (7th Cir.1976); United States v. Cannone, 528 F.2d 296, 298-300 (2d Cir.1975); United States v. Richter, 488 F.2d 170, 173-74 (9th Cir.1973); United States v. Anderson, 481 F.2d 685, 693 (4th Cir.1973), aff'd on other grounds, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 21 (1974); see United States v. Sclamo, 578 F.2d 888, 890 & n. 1 (1st Cir.1978); United States v. Bolden, 514 F.2d 1301, 1312 (D.C.Cir.1975); see also United States v. McCrane, 547 F.2d 204, 208 n. 2 (3d Cir.1976); United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.), cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972)