UNITED STATES of America

v.

Irving BETHEA, a/k/a "Irvin Bethea," Corey Grant, Vincent Jackson, and Andre Williams.

Crim. A. No. 90–328.

United States District Court, D. New Jersey.

March 4, 1992.

Michael Chertoff, U.S. Atty. by Alberto Rivas, Donna Krappa, Asst. U.S. Attys., Newark, N.J., for U.S.

Vincent Scoca, Bloomfield, N.J., for Vincent Jackson.

David Glazer, Livingston, N.J., for Corey Grant.

Carl Herman, Livingston, N.J., for Irving Bethea.

Michael Pedicini, West Orange, N.J., for Andre Williams.

## PUBLIC OPINION

HAROLD A. ACKERMAN, District Judge.

Irving Bethea, Corey Grant, Vincent Jackson, and Andre Williams were indicted by a federal grand jury on a variety of counts, including a RICO conspiracy count, a substantive RICO count, and various drug charges. Shortly after their arraignments, this court ordered the government to turn over all exculpatory material in its possession as defined by the trilogy of Supreme Court cases, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The government now seeks a protective order shielding certain information relating to the credibility and, hence, the identity of particular government witnesses from disclosure to the defendants. To the extent it exists, the information the government is seeking to withhold is contained in documents such as plea and non-prosecution agreements, criminal records, and witness' statements involving their own crimes. For the reasons set forth below, this court grants the government's motion in its entirety.

### I. Background

These defendants were originally indicted with four other individuals. This court issued a scheduling order requiring the government to immediately disclose all *Brady–Giglio–Agurs* material to each defendant. Almost one year after this initial indictment, the government returned a superseding indictment which added two capital counts against one of the co-defendants, Bilal Pretlow. Mr. Pretlow was alleged to have been the leader of the drug organization which formed the RICO enterprise. Upon the joint motion of all defendants but Mr. Pretlow and with the consent of the government, this court severed Mr. Pretlow's trial from that of the remaining defendants.

Shortly before Mr. Pretlow's trial was to begin, the government sought on, an *ex parte* basis, the same sort of protective order as it is seeking here regarding the same witnesses. More specifically, in an effort to protect the certain witnesses whose safety it believed would be in danger if their identities were disclosed to Mr. Pretlow, the government requested permission to delay disclosure of *Brady–Giglio–Agurs* information until a future date set by the court. Upon receiving the government's *ex parte* motion, this court instructed the government to notify Mr. Pretlow that a motion for a protective order had been made. Mr. Pretlow was given the opportunity to file an opposing brief and both parties were permitted to present oral arguments regarding the standards applicable to such order at a public hearing. In addition, parties both presented further evidence to the court during several *in camera* hearings.

Upon careful consideration of all the evidence, this court concluded that the government's concern that the safety of certain witnesses would be seriously jeopardized if they were prematurely identified as government witnesses was well-founded.

Therefore, I granted the government's motion for a protective order to the extent that I did not require the immediate disclosure of the information. However, I also noted that federal law required the government to turn over a witness list to a defendant facing capital charges three days prior to trial. Since the government had not yet determined whether or not it would voluntarily disclose the *Brady–Giglio–Agurs* material it was seeking to shield at the same time as it turned over the witness list, this court refrained from setting a final date for disclosure of the material. Instead, I scheduled another public hearing at which parties addressed the effect of the federal statute on the government's motion for a protective order.

After again listening to parties' arguments, this court held that the production of a witness list three days before trial seriously undermined the government's otherwise well-founded claim that the early disclosure of certain *Brady–Giglio–Agurs* material would jeopardize the safety of specific witnesses and, possibly, their families. In other words, this court determined that the witnesses' safety was jeopardized primarily through the disclosure of their identities as government witnesses. Once the witness list was produced, however, the additional risk associated with the disclosure of *Brady–Giglio– Agurs* material was comparatively insignificant. Accordingly, I ordered the government to disclose all *Brady–Giglio–Agurs* material to Mr. Pretlow in conjunction with the witness list. This court began Mr. Pretlow's trial on November 4, 1991. On December 29, 1991, Mr. Pretlow committed suicide while incarcerated in the Union County Jail.

Shortly before Mr. Pretlow's trial ended, counsel for several of his severed co-defendants wrote to the court, requesting enforcement of its prior scheduling order mandating disclosure of all *Brady–Giglio–Agurs* material. In response, the government has again moved for a protective or-

der barring the disclosure of any information relating to the identity of certain witnesses until three days before each witness testifies. This court has held another public hearing at which all parties were present and two *in camera* hearings at which the government and counsel for Corey Grant submitted evidence. Based on this record, this court now renders the following public opinion. An accompanying sealed opinion which specifically details my evaluation of the *ex parte* evidence also has been issued.

## DISCUSSION

The government had conceded that the information it is seeking to withhold from immediate disclosure to the defendants constitutes *Brady–Giglio–Agurs* material. As such, the government acknowledges that it must be disclosed to the defendants "in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir.1983); accord *Agurs*, 427 U.S. at 107–08, 96 S.Ct. at 2399–2400. In accordance with the Third Circuit's "longstanding policy of encouraging early production" of *Brady* material, it has been this court's general policy to interpret this requirement broadly by ordering the disclosure of such information well in advance of trial. See *United States v. Starusko*, 729 F.2d 256, 261 (3rd Cir.1984).

▬ Absent any countervailing factors, this case in particular would appear to demand an early disclosure date. Counsel have estimated that the trial of this case should take three months. On simply an evidentiary level, it will involve a multitude of witnesses, wiretap tapes, and other exhibits with which defense counsel must become familiar. To adequately prepare themselves for the government's witnesses, defense counsel must have, among other things, a reasonable opportunity to investigate the accuracy of any *Brady–Giglio–Agurs* material regarding those witnesses.[1] For instance, as defense counsel

---

1. Relying on a broad construction of the Third Circuit's decision in *Higgs*, 713 F.2d 39, the government contended during Mr. Pretlow's hearings that the due process concerns empha-

sized in *Brady* and *Giglio* never necessitate the pre-trial disclosure of impeachment or credibility information. I disagree.

argued during the public hearing, official transcripts of an individual's criminal record are notoriously inaccurate. Accordingly, if counsel is not given a reasonable opportunity to investigate the primary documents on which a criminal record is based, they will not be able to effectively cross-examine and possibly impeach a witness regarding his or her background. On the one hand, they would risk undercutting their own credibility by confronting a witness with a crime he or she was not convicted of or even did not commit. On the other, they might miss the opportunity to fully explore compromising information that was not clearly apparent from the criminal record itself. A similar argument also could be made regarding witness' statements about their own criminal activity.

Nevertheless, although the aforementioned factors all encourage disclosure of credibility or impeachment material at the earliest possible date, this court is well aware that there is a range of time during which the disclosure of such information will still permit its effective use at trial and, thereby, satisfy due process concerns. Within the parameters of this time frame, it is within a court's discretion to balance any countervailing factors against those favoring early disclosure and to settle on a date which accurately reflects that balance. See *Higgs*, 713 F.2d at 44–45.

Here, the government raises a serious countervailing factor, namely the risk that the early disclosure of *Brady–Giglio–Agurs* material regarding certain witnesses would place those witnesses and, possibly, their families in grave danger. To support its claim, the government has submitted numerous documents and affidavits on an *ex parte* basis. When examining these materials, this court was extremely conscious of the disadvantage faced by the defendants. Since they did not know the specific allegations the government was making or have the opportunity to review the evidence it had submitted to this court, they were severely handicapped in offering any sort of response. Accordingly, this court was particularly rigorous in its scrutiny of the government's *ex parte* evidence. See *United States v. Napue*, 834 F.2d 1311, 1319–23 (7th Cir.1987) (offering astute criticisms of protective orders based on *ex parte* evidence).

Having thoroughly reviewed all the submitted documents, I find they overwhelmingly support the government's claims that the early disclosure of *Grady–Giglio–Agurs* material regarding certain witnesses risks the safety of those witnesses and, possibly, their families for three reasons: First, the evidence indicates at least three of the defendants have routinely used violence as the means of achieving a desired end. At times, such violence has been directed against witnesses to their alleged drug activities. At other times, the violence has been used to recruit or intimate rival drug dealers. Second, despite the defendants' contentions that they have no present ability to endanger any witness because all the participants in the drug organization in which they are alleged to have belonged are either dead or incarcerated, see, e.g., Transcript of Public Hearing (Feb. 13, 1992) at 20–21 (Mr. Pedicini, Esq.), I believe the evidence indicates otherwise.

Exactly when due process concerns require the disclosure of *Brady–Giglio* material is heavily dependant on the facts of the case. In particular, it is dependant on the type of information being withheld from disclosure. In *Higgs*, the impeachment or credibility information at issue consisted of a list of the names and addresses of all prosecution witnesses granted immunity or leniency by the government and the details of their particular agreements. As such, the information was essentially already verified by the government and did not require further investigation before it could be effectively used to cross-examine and possibly impeach a witness. Accordingly, the Third Circuit was able to conclude that disclosure of this information on the day a witness was scheduled to testify provided the defendant with an adequate opportunity to utilize the information effectively and, hence, did not violate the defendant's due process rights to a fair trial. By contrast, some of the impeachment and credibility material the government is seeking to withhold in this case will require at least minimal investigation. In light of this key factual distinction, the specific holding of *Higgs*—that disclosure of impeachment and credibility material is permissible on the day the witness is scheduled to testify—may be inapplicable to this case.

More simply, I they still have access to people who would be willing to their bidding. Finally, and in light of the previous two reasons, perhaps most importantly, each witness is expected to provide key testimony regarding the defendants' participation in at least one serious crime.

Given the strength of the government's countervailing factor, I believe a protective order permitting the government to withhold *Brady–Giglio–Agurs* material regarding certain witnesses should be issued. In reaching this conclusion, I acknowledge that it is probable the defendants already have access to some of the documents the government is seeking to withhold and that these witnesses have not yet been harmed. See, e.g., Transcript of Public Hearing (Feb. 13, 1992) at 28–31 (David Glazer, Esq.). I also acknowledge that the government announced during its opening statement in Mr. Pretlow's trial the names of at least two witnesses who may or may not be testifying here. Nevertheless, I am convinced the risk to these witnesses is sufficiently serious that it requires this court to withhold disclosure of these witnesses' identities from the defendants for as long as due process permits. In other words, I believe that even when balanced against the other factors favoring early pretrial disclosure, this countervailing factor involving witness safety is sufficiently serious to warrant a modification of this court's prior directive requiring immediate disclosure of all *Brady–Giglio* material.

■ The government requests permission to withhold disclosure of the *Brady–Giglio–Agurs* material until three days before a witness testifies. After carefully considering whether or not this time period would be sufficient to permit the defendants to utilize the disclosed material, I grant the government's request on the condition that it provides the defendants with *all supporting documents* to this material at the same time.[2] In addition, if the government fails to call any of the witnesses for which it seeks this order, this court requires it to turn over the *Brady–Giglio–Agurs* material regarding them at the conclusion of its case.

### Conclusion

For all the foregoing reasons, this court grants the government's motion to withhold *Brady–Giglio–Agurs* material regarding certain witnesses until three days before their testimony. If any of these witnesses do not testify, the government must disclose any *Brady–Giglio–Agurs* material it has regarding them at the close of its case. The government is also required to provide the defendants with all supporting documentation for the material it eventually discloses.

---

2. For example, the government must provide documents detailing the initial complaints and charges which support a criminal record.