UNITED STATES of America, Plaintiff,

v.

Mark EVANGELISTA,
et al., Defendants.

Crim. No. 92–503.

United States District Court,
D. New Jersey.

Jan. 7, 1993.

Dennis D.S. McAlevy, Union City, NJ, for defendant Mark Evangelista.

Peter R. Willis, Jersey City, NJ, for defendant Martin Riccardi.

James M. Weinberg, Springfield, NJ, for defendant Thomas Kozak.

Bonna L. Horovitz, Asst. U.S. Atty., U.S. Atty.'s Office, Newark, NJ, for U.S.

## AMENDED OPINION

IRENAS, District Judge.

This matter comes before the court upon various pretrial motions of defendants Mark Evangelista, Martin Riccardi and Thomas Kozak.[1] Defendants have moved for suppression, severance, or further redaction of the government's proposed redacted version of a statement given to F.B.I. agents by defendant Kozak while in custody. Defendants have also requested early disclosure of all exculpatory material as defined in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("*Brady* material"); information relevant to credibility of the prosecution's witnesses within the scope of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("*Giglio* material"); impeachment material within the meaning of the Jencks Act, 18 U.S.C. § 3500 ("Jencks Act material"); material relating to prior crimes or other "bad acts" of defendants within the meaning of Fed.R.Evid. 404(b); a list of witnesses the prosecution intends to call at trial; and tape recordings of a consensually recorded conversation between defendant Evangelista and one David Pachucki. Trial

of this matter is scheduled to commence on Monday, January 11, 1993.

## I. *Background*

This case arises from the beating of Khausal Sharan on a sidewalk in Jersey City, New Jersey on September 24, 1987. On September 10, 1992 the defendants were indicted by a federal grand jury in connection with the beating. All three defendants are charged with aiding and abetting one another in the willful deprivation of Sharan's civil rights in violation of 18 U.S.C. § 245(b)(4)(A) and 42 U.S.C. § 3631(b)(1).

The incident was initially investigated by the Jersey City Police Department and Hudson County Prosecutor's Office. No indictments resulted from that investigation. According to counsel at oral argument, the F.B.I. began its investigation in November, 1991.

On September 11, 1992, while in the custody of the F.B.I., defendant Kozak gave an inculpatory statement which identified by name and actions the two codefendants. The government has proposed to redact this statement before offering it as evidence at the joint trial of all three defendants. Neutral pronouns would replace the names of the codefendants in a typed version of the originally handwritten confession.

Whether the use of this statement would violate the Confrontation Clause[2] rights of defendants Riccardi and Evangelista or whether a redacted version is properly admissible under the Supreme Court's decisions in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) is the principal question for decision in these motions.

## II. *The Bruton Issue*

### A. Legal Background

This motion raises an important question explicitly left open by the Supreme Court's

---

1. At oral argument the court granted defendants' requests to join each others' motions. Accordingly each defendant is treated as joining all portions of defendants' motions.

2. U.S. Const., amend. VI.

decision in *Richardson:* whether the admission of a confession in which a codefendant's name has been replaced with a neutral symbol or pronoun violates that codefendant's rights under the Confrontation Clause and the rule established by the Court in *Bruton*. *Richardson*, 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5. Since the Court's decision in *Richardson*, it appears that the Third Circuit Court of Appeals has not addressed this question.

The central issue raised in *Bruton* was whether the conviction of a defendant at a joint trial should be set aside where the jury in determining his guilt or innocence had been instructed to disregard a codefendant's confession inculpating the defendant. *Bruton*, 391 U.S. at 123–24, 88 S.Ct. at 1620–21. Prior to *Bruton* the dominant view had been that juries are sufficiently capable of following limiting instructions that confessions in joint trials were not unconstitutional when accompanied by an appropriate instruction. *See Delli Paoli v. United States*, 352 U.S. 232, 239–42, 77 S.Ct. 294, 298–300, 1 L.Ed.2d 278 (1957).

The basic premise of *Delli Paoli* was that it is " 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him in committing the crime." *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622 (quoting *Delli Paoli*, 352 U.S. at 239, 77 S.Ct. at 298–99). The *Bruton* Court reversed *Delli Paoli*, holding that because there was "substantial risk, despite instructions to the contrary, that the jury looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession" violated petitioner's rights under the Sixth Amendment. *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622.

The Supreme Court granted certiorari in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) to resolve a conflict which had arisen among the circuits over whether a defendant's confession that was inculpatory as to a codefendant *only* when linked to other evidence in the trial implicated the codefendant's Sixth Amendment rights.

The Sixth Circuit had held that when performing a *Bruton* analysis, to assess a confession's "inculpatory value" a court cannot examine just the confession on its face but must also examine all of the other evidence introduced at trial. *Richardson*, 481 U.S. at 206–07, 107 S.Ct. at 1706–07 (quoting *Marsh v. Richardson*, 781 F.2d 1201 at 1212 (6th Cir.1986) (internal quotations omitted). Justice Scalia refers to this as the "evidentiary linkage" or "contextual implication" approach to the *Bruton* issue. *Id.* 481 U.S. at 206, 107 S.Ct. at 1706.

The Third Circuit, by contrast, had held that, "When a codefendant's extrajudicial statement does not directly implicate the defendant ... the *Bruton* rule does not come into play." *United States v. Belle*, 593 F.2d 487, 493 (3d Cir.1979). The court explained by way of example that courts have "consistently approved" the use of confessions at joint trials "where all references to the complaining defendant have been redacted, at least if the redacted versions do not explicitly suggest the participation of the complaining defendant." *Id.* Other pre-*Richardson* decisions in the Third Circuit also found no *Bruton* violation where a confession did not directly inculpate the other defendants.[3]

In *Richardson*, Justice Scalia, writing for a 6–3 majority [4] held, "[T]he Confrontation Clause is *not violated* by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709.

---

**3.** *See United States v. Alvarez,* 519 F.2d 1052 (3d Cir.1975) (no *Bruton* violation where confession did not mention petitioner), *cert. denied,* 423 U.S. 914, 96 S.Ct. 221, 46 L.Ed.2d 143 (1975); *United States v. Lipowitz,* 407 F.2d 597 (3d Cir. 1969), (no *Bruton* violation where confession did not refer to petitioner by name but indicat-

ed that "other fellows" were involved), *cert. denied,* 395 U.S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969).

**4.** Justices Stevens, Brennan and Marshall dissented.

■ The significance of the *Richardson* Court's holding is that it squarely rejected the "evidentiary linkage" approach. As a result, only those confessions that are directly inculpatory (of codefendants) on their face raise Confrontation Clause concerns. The Court explained that confessions that may create inculpatory inferences only when considered together with other evidence are not so "powerfully incriminating" as to raise a *Bruton* question. *Id.* at 208–09, 107 S.Ct. at 1707–08. Furthermore the Court emphasized that *Bruton* had created only a "narrow exception" to the assumption in the law that jurors can and do generally follow instructions given to them. *Id.* at 208, 107 S.Ct. at 1707–08.

Justice Scalia did not suggest that a redacted confession posed *no* risk that a jury would draw improper inferences, but rather suggested that the level of risk was constitutionally acceptable because "there does not exist the overwhelming probability" that a jury would be unable to properly heed a limiting instruction. *Id.*

The Court also explained one practical distinction between "evidence requiring linkage" and "evidence incriminating on its face." If the *Bruton* rule were extended to encompass the " 'contextual implication' " doctrine, redaction would not be practicable and it would not be possible for a trial judge to predict the admissibility of a confession in advance of trial. *Id.*, at 209, 107 S.Ct., at 1708.

In *Richardson* the confession had been redacted to omit all references to respondent Clarissa Marsh. Apparently anticipating the issue now before us, the Court explicitly declined comment on whether a confession in which a codefendant's name was replaced with a neutral (non-identifying) pronoun would be permissible. "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5.

The distinction between a confession "incriminating on its face" and one that becomes incriminating "only when linked with evidence introduced later at trial," *Id.* at 208, 107 S.Ct. at 1707, as a basis for determining when a jury might, or might not, be able to heed a limiting instruction seems reasonable in the context of a redaction which eliminates *all* references to codefendants. However, as the reservation in *Richardson* suggests, the comfort level with this premise may be lower when the confession specifically identifies codefendants, even if only with the use of pronouns.

As the moving parties argue in this case, common sense tells us that the risk of a juror drawing impermissible inferences against a codefendant is greater where the confession specifically refers to fellow perpetrators, even if unnamed, than where a confession is totally silent as to the presence or existence of other wrongdoers.

Although the Third Circuit has not addressed this issue since *Richardson,* other Courts of Appeals have concluded that a plain reading of *Richardson* would permit the use at trial with limiting instructions of confessions redacted to include only neutral references to codefendants which are not facially incriminating.

In *United States v. Williams,* 936 F.2d 698, 701 (2d Cir.1991), the court held that an F.B.I. agent's testimony describing one defendant's confession did not violate the *Bruton* rights of his codefendant because the statement referred to the codefendant only with neutral references such as "this guy." Decisions in the Second Circuit have consistently held that confessions in which a codefendant's name is replaced with a neutral pronoun do not violate the *Bruton* rule " 'where the statement standing alone does not otherwise connect co-defendants to the crimes.' " *Id.,* at 700.[5]

The *Williams* court explained that the relevant analysis is whether the redacted confession isolated from other evidence in-

**5.** *See United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Benitez,* 920 F.2d 1080, 1087 (2d Cir. 1990); *United States v. Smith,* 918 F.2d 1032,

1038 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1086, 112 L.Ed.2d 1191 (1991); *United States v. Alvarado,* 882 F.2d 645, 652 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

criminates one of the codefendants. If standing alone it does not incriminate a codefendant, then "it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." *Id.*, 936 F.2d at 701. More importantly, the court noted that, "This analysis is adopted *directly from Richardson itself*, and the principal extension of *Richardson* by our decisions is that they allow redacted confessions to refer to accomplices with neutral pronouns." *Id.* (emphasis added).

*Williams* also concluded that the degree of potential prejudice to a codefendant when the confession is linked to other evidence is irrelevant: "The interlocking of the confessions thus all but insured that a jury *could* identify the person referred to in McKenzie's confession as Williams." *Id.* Thus, the Second Circuit has construed *Richardson* as holding that facially neutral confessions do not violate *Bruton* even where there is a high degree of certainty that, when the confession is linked to other evidence in the trial, the jury will tie the neutral pronoun to a particular codefendant.[6]

At least one District Court in the Third Circuit has also held that the admission of a confession with neutral references did not violate a codefendant's *Bruton* rights. In *McCloskey v. Ryan*, No. 90–1478, 1991 WL 165076, 1991 U.S.Dist. LEXIS 11952 (E.D.Pa. August 23, 1991), McCloskey filed a habeas petition alleging that the use of his codefendant's confession, which referred to McCloskey as the "other guy," violated his *Bruton* rights. The confession also made reference to "Cosmos" apartments where petitioner allegedly could be found. Petitioner's argument was that these two references implicated him directly enough to be in violation of *Bruton*. *Id.*, 1991 WL 165076 at *6, 1991 U.S.Dist. LEXIS 11952 at *19. The court disagreed because the confession was not facially incriminating, stating that *"Richardson* requires I reject his *Bruton* violation contention." *Id.*, 1991 WL 165076 at *7, 1991 U.S.Dist. LEXIS 11952 at *21.

### B. Application to Defendant Kozak's Confession

#### 1. Suppression:

In light of the cases described above, it is clear that *Bruton* provides no independent basis for suppressing Kozak's confession, and none of the defendants has seriously sought suppression for this reason.[7]

#### 2. Severance:

Defendants bear a heavy burden when moving for severance under Fed. R.Crim.P. 14. *United States v. Eisenberg*, 773 F.Supp. 662, 697 (D.N.J.1991) (citing cases). Decisions on motions for severance are committed to the discretion of the trial court. *See United States v. Di Pasquale*, 740 F.2d 1282, 1293 (3d Cir.1984). The central issue is whether a joint trial would "unfairly prejudice the jury against a particular defendant." *Id.* at 1294. In other words the question is "whether the jury could reasonably be expected to 'compartmentalize' the evidence against the various defendants and to 'consider it for its proper purposes.'" *Id.*

**6.** Although not necessarily relevant here because neither party has suggested leaving blank spaces in Kozak's statement, it should be noted that both the Third Circuit and Southern District of New York agree that leaving blank spaces or simply whiting out a codefendant's name in a redacted confession violates the *Bruton* rule. In *United States v. Di Gilio*, 538 F.2d 972, 983 (3d Cir.1976), the court held that a "blank" left in a redacted confession violated *Bruton*, observing that, "the jury might well have drawn the inference that DiGilio was the 'blank' referred to in the Lupo and Szwandrak statements." Similarly, in *Aziz v. Gilliard*, No.

92–0101, 1992 WL 249888, 1992 U.S.Dist. LEXIS 14542 (S.D.N.Y. September 23, 1992), the court held that the codefendant's confession in which the habeas petitioner's name was "whited out" violated petitioner's *Bruton* rights, citing *Richardson* and relying on pre-*Richardson* Second Circuit opinions. *Aziz*, 1992 WL 249888 at *5, 1992 U.S.Dist. LEXIS 14542 at *14.

**7.** Defendant Kozak sought and this court granted a separate suppression hearing pursuant to 18 U.S.C. § 3501 to be held on January 7, 1993. Nothing in this opinion should be construed as indicating the court's view of the merits of the § 3501 motion.

In the context of *Bruton* questions, the Supreme Court has suggested that severance is not the best approach. *Richardson*, 481 U.S. at 209–10, 107 S.Ct. at 1708–09. The Court explained in some detail that joint trials often better serve both the interests of justice and the efficiency of the criminal justice system. *Id.* at 210, 107 S.Ct. at 1708–09.

■ The events and parties involved in this matter are not so complex that the jury is likely to have any difficulty compartmentalizing its analysis of the evidence with respect to each of the three defendants. Defendants have asserted no source of prejudice whatsoever other than defendant Kozak's confession. Therefore, severance might have become appropriate only if the statement could not have been adequately redacted to avoid a *Bruton* violation.

### 3. Redaction:

The Supreme Court's decisions in both *Bruton* and *Richardson* assume implicitly that admission of a criminal defendant's confession at a joint trial will almost always pose some risk of prejudice to his codefendant(s). Moreover, as noted earlier, there is at least the possibility, if not the probability, that the degree of this risk is greater if the redacted confession uses pronouns to identify codefendants rather than eliminating, as in *Richardson*, all references to codefendants.

However, a trial court will not always have the luxury of a simple choice between a confession with no references to codefendants or one which employs pronouns. Confessions raising *Bruton* questions will often contain so many references to the participation of others that it may be difficult to redact them to omit any reference to codefendants' existence and still have a coherent statement. As a practical matter, the choice will often be between a redacted confession with neutral references or no usable confession at all for joint trial.

Kozak's confession is such a statement.[8] Kozak's narrative contains so many references to the acts and involvement of the other two participants that it could not be redacted to omit any reference to their existence and still be a coherent statement.[9]

---

8. The original hand-written copy of defendant Kozak's statement is as follows:

I, Tommy Kozak, hereby make the following free and voluntary statement to William R. Flemming and Bradley W. Orisini, who have identified themselves as special agents of the FBI. I have been advised by Special Agent Flemming that I am being interviewed regarding my involvement in the beating of KASHUAL SARAN on September 24th, 1987 in the area of Central Ave. and Ferry St., Jersey City, NJ.

I presently reside at 171 Griffith St., Jersey City, NJ and was born on 11/29/67. I have a GED and can read and write english.

On 9/24/87 I was hanging out with Marty Riccardi, and Mark Evangelista. We were driving in Mark's silver camaro in the area of Central Ave. and Ferry St. near the firehouse. While we were driving we saw—t.k. a dark skinned Indian guy walking down Ferry St. Marty said "THERE'S A DOT HEAD let's get him." Mark parked the car on Ferry St. near "the wall". Mark, who was playing baseball, had some baseball bats in his car. As we got out Marty grabbed one of the bats. All three of us crossed the street and approached the Indian guy. When we got close, Marty took the bat and hit the Indian guy in the head. The Indian guy then fell down and Mark, Marty and myself began kicking him while he was on the ground. We all beat him for about a minute. During the time he was on the ground Marty hit him several times with the bat. After about a minute we all ran back to the car and drove away. When we left the Indian guy was lying on the ground.

I have read this two page statement, have initialed all corrections, and it is entirely true and correct.

/s/ Thomas Kozak
9/11/92

9. The government's proposed redacted version of defendant Kozak's statement is as follows:

I, TOMMY KOZAK, hereby make the following free and voluntary statement to William R. Fleming and Bradley W. Orsini, who have identified themselves as Special Agents of the FBI. I have been advised by Special Agent Fleming that I am being interviewed regarding my involvement in the beating of KASHUAL SARAN on September 24th, 1987 in the area of Central Avenue and Ferry St., Jersey City, NJ.

I presently reside at 171 Griffith St., Jersey City, NJ and was born on 11/29/69. I have a GED and can read and write English.

On 9/24/87 I was hanging out with two individuals. We were driving in one of the guy's silver camaro in the area of Central Ave. and Ferry St. near the firehouse. While we were driving we saw a dark skinned Indian guy walking down Ferry St. One of the guys I was with (not the one with the camaro) said "THERE'S A DOT–HEAD: let's get him." The guy who was

A trial court must also be circumspect in the process of redacting to insure that the statement which goes to the jury retains the sense, meaning and phrasing of the original. The weight a jury gives to an alleged confession may well depend on its form and wording, and the process of redaction should not create a potential for distorting the jury's ability to properly evaluate it.

In light of the substantial authority cited above holding the use of neutral pronouns permissible, and especially in light of the analysis in *United States v. Williams*, 936 F.2d 698 (2d Cir.1991), the court is persuaded that the use of neutral references in defendant Kozak's statement will not violate the Confrontation Clause rights of defendants Evangelista and Riccardi if admitted with a proper limiting instruction.

However, defendants argue that if the statement is to be admitted, it should be further redacted. Because the statement clearly indicates that there were three participants and clearly distinguishes between the roles played in the assault by the driver and the other passenger, defendants assert that other evidence will make it obvious to the jury which of the acts in the confession are attributable to each of the other two defendants.

The court is aware that the confession not only specifies the exact number of participants in the crime, but also distinguishes the specific acts of each of the three participants. This obviously creates a potential for prejudice if: 1) the defendants can be linked to specific details in the confession by other evidence, and 2) the

jury does not follow the court's limiting instruction.

A fair reading of *Richardson* is that the Supreme Court wanted to avoid analyzing the "contextual implication" of every confession, favoring instead a bright line rule permitting admissibility where the confession is facially non-incriminating to codefendants. However, Justice Scalia's reservation with respect to the use of pronouns to identify codefendants, suggests that once undertaking to redact a confession in this fashion, a court should, where possible, exercise its discretion not only to substitute pronouns or other neutral designations for actual names, but to make other minor changes which may reduce the risk of prejudice without doing violence to the statement.

The court directs that the following changes be made in the redacted confession that will be allowed at trial:

1. All references to the color and model of the automobile should be deleted;

2. Changes should be made which are necessary to conceal the actual number of participants;

3. In a few instances the government's version did more than substitute a neutral designation for a name, and actually made changes which distinguished the acts of the driver from those of the other passenger. In these instances the confession should be "un-redacted" to simply substitute a neutral designation for a name, which has the additional benefit of making the confession track the original more closely.[10]

/s/ Thomas Kozak
9-11-92

driving the camaro parked the car on Ferry St., near "the wall." That guy, who was playing baseball, had some baseball bats in his car. As we got out, the other guy grabbed one of the bats. All three of us crossed the street and approached the Indian guy. When we got close the guy who had grabbed the bat took the bat and hit the Indian guy in the head. The Indian guy fell down and all three of us began kicking him while he was on the ground. We all beat him for about a minute. During the time he was on the ground. The guy with the bat hit the Indian guy several times with the bat. After about a minute we all ran back to the car and drove away. When we left the Indian guy was lying on the ground.

I have read this two page statement, have initialed all corrections, and it is entirely true and correct.

**10.** As a result of the further redactions ordered by this court, the government will be allowed to use the following version:

I, TOMMY KOZAK, hereby make the following free and voluntary statement to William R. Fleming and Bradley W. Orsini, who have identified themselves as Special Agents of the FBI. I have been advised by Special Agent Fleming that I am being interviewed regarding my involvement in the beating of KASHUAL SARAN on September 24th, 1987 in the area of Central Avenue and Ferry St., Jersey City, NJ.

III. *Early Production of Exculpatory, Impeachment and Other Evidentiary Material*

A. Brady Material

On September 25, 1992 this court issued an order for discovery and inspection including a provision that the government "Permit defendant's attorney to inspect and copy or photograph any exculpatory material within the purview of *Brady v. Maryland.*" *United States v. Evangelista, et. al.* Crim. No. 92–503 (D.N.J. September 25, 1992). The government states that, "It has complied with that order and fully intends to continue complying should exculpatory material come into its possession." *Government's Brief,* at 4. Because no assertion of non-compliance was brought to the court's attention at oral argument on December 11, 1992, this portion of defendants' motion has been rendered moot.

B. Giglio Material

There is no requirement that information in the government's possession that can be used to impeach or challenge the veracity of the government's witnesses be disclosed prior to "the day that the witness testifies." *United States v. Higgs,* 713 F.2d 39 (3d Cir.1983), *cert. denied, Kemp v. United States,* 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). In *Higgs* the court also held it was an abuse of discretion for the trial court to have ordered production of *Giglio* material a week prior to trial. *Id.,* at 45. The court recognized that such production is intended solely to enable defendants to adequately cross-examine the government's witnesses, not to assist them with a pre-trial investigation. *Id.* It should also be noted that any pretrial request for impeachment material poses at least potential questions of increasing pressure upon prospective witnesses. This court has denied similar requests in the past. *U.S. v. Eisenberg,* 773 F.Supp. 662, 684–85 (D.N.J.1991) (denied advance disclosure of *Giglio* material where government agreed to provide it the day before the witness testifies).

■ In this case, the government has offered to voluntarily disclose all *Giglio* material on the eve of trial, which will be Friday, January 8, 1993. It was explained at oral argument that defendants anticipate some of this material may require examining other documents of public record. Although this pretrial production is clearly not required, in an effort to balance the legitimate interests of all parties and in an effort to avoid interruptions during trial, the Court will order the government to produce all *Giglio* material three business days prior to trial, which will be Wednesday, January 6, 1993.

C. Jencks Act Material

■ In *United States v. Murphy,* 569 F.2d 771, 773 (3d Cir.1978), the court stated, "[T]he Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled 'until said witness has testified on direct examination *in the trial of the case.*'"[11] Out-

I presently reside at 171 Griffith St., Jersey City, NJ and was born on 11/29/69. I have a GED and can read and write English.

On 9/24/87 I was hanging out with other individuals. We were driving in one of the guy's car in the area of Central Ave. and Ferry St. near the firehouse. While we were driving we saw a dark skinned Indian guy walking down Ferry St. One of the guys said "THERE'S A DOT–HEAD: let's get him." We parked the car on Ferry St., near "the wall." One of the guys who was playing baseball, had some baseball bats in the car. As we got out, a guy grabbed one of the bats. All of us crossed the street and approached the Indian guy. When we got close the guy who had grabbed the bat took the bat and hit the Indian guy in the head. The Indian guy fell down and all of us began kicking him while he was on the ground. We

all beat him for about a minute. During the time he was on the ground one of the guys hit him several times with the bat. After about a minute we all ran back to the car and drove away. When we left the Indian guy was lying on the ground.

I have read this two page statement, have initialed all corrections, and it is entirely true and correct.

/s/ Thomas Kozak
9–11–92

**11.** The Jencks Act provides in relevant part:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or

side this circuit, other courts have held that pretrial discovery motions for Jencks Act material are entirely inappropriate. *See United States v. White*, 750 F.2d 726, 729 (8th Cir.1984) (government cannot be compelled to disclose Jencks Act material prior to trial); *United States v. Peterson*, 524 F.2d 167, 175 (4th Cir.1975); *U.S. v. Aguirre–Parra*, 763 F.Supp. 1208 (S.D.N.Y. 1991) (same).

At oral argument, the government offered to provide defendants with all Jencks Act material on the eve of trial. While the government was clearly under no legal obligation to do so, the court is persuaded that this offer strikes an appropriate balance and will order production of Jencks Act material on Friday, January 8, 1992.

### D. Federal Rule of Evidence 404(b) Material

Federal Rule of Evidence 404(b) was amended effective December 1, 1991 to require the prosecution in a criminal case to "provide reasonable notice in advance of trial" of any such evidence it intends to introduce at trial. Cases interpreting the phrase "reasonable notice" are few in number so far.

In *U.S. v. Williams*, 792 F.Supp 1120, 1133 (S.D.Ind.1992), the court held that ten days prior to trial would be the reasonable period for advance notice required under the amendment. In *U.S. v. Alex*, 791 F.Supp. 723, 729 (N.D.Ill.1992), the court held seven days would be reasonable advance notice.

At oral argument the government offered to provide this information to defendants 7 or 10 days in advance of trial. Because the alleged incidents occurred more than five years ago, defendants' preparation to respond to the government's Rule 404(b) material may require more effort than if the incidents had occurred

more recently. The court will order the government to provide this information to defendants and the court on Monday, December 28, 1992 (10 business days prior to trial, excluding weekends but not excluding New Year's Day).

### E. Witness List and Tape Recording

It is well established that criminal defendants have no right in advance of trial to see a list of witnesses the prosecution will or may call. *Government of the Virgin Islands v. Martinez*, 847 F.2d 125, 128 (3d Cir.1988) (government is not required to disclose names of witnesses in non-capital cases, but trial court in its discretion may order such discovery); *United States v. White*, 750 F.2d 726, 728 (8th Cir.1984) (defendants have no right to such pretrial discovery, but in its discretion district court may order it); *U.S. v. Zolp*, 659 F.Supp 692 (D.N.J.1987); *U.S. v. Vastola*, 670 F.Supp 1244, 1268 (D.N.J.1987) (witness lists and statements of non-testifying witnesses not required to be disclosed as *Brady* material). The court will not order the government to disclose its list of prospective witnesses.

The court need not rule on defendant's request for a copy of the tape recording of a consensually recorded conversation between defendant, Mark Evangelista, and one David Pachucki because the government has provided defendants with a copy which defense counsel stated was audible.[12]

The court will enter an appropriate order in conformance with this opinion.

---

inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the

witness, the court shall order it to be delivered directly to the defendant for his examination and use. 18 U.S.C. § 3500(a), (b).

**12.** Additionally the court instructed counsel that transcripts of any recorded conversations that any party intends to use at trial must be prepared well in advance of trial, and the transcript of the Evangelista and Pachucki recording must be delivered to the court by close of business on December 24, 1992.